Filed 12/9/2015 1:36:45 PM
Billy Fox
District Clerk
Bowie County, Texas
Theresa Capps, Deputy

CAUSE NO. 15C1684-CCL _____

| | | |
|---|---|---|
| CHRISTA CARTER CHAMPION, | § | IN THE COUNTY COURT AT LAW |
|    Plaintiff, | § | |
| | § | |
| V. | § | |
| | § | |
| STATE FARM COMPANIES; | § | |
| STATE FARM COUNTY MUTUAL | § | |
| INSURANCE COMPANY OF TEXAS; | § | OF |
| STATE FARM MUTUAL | § | |
| AUTOMOBILE INSURANCE | § | |
| COMPANY; AND STATE FARM | § | |
| FIRE AND CASUALTY COMPANY, | § | |
|    Defendant, | § | BOWIE COUNTY, TEXAS |

## PLAINTIFF'S ORIGINAL PETITION AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW, CHRISTA CARTER CHAMPION, Plaintiff, by and through her attorney of record, the Law Offices of Flint & Soyars, P.C., complaining of Defendants, STATE FARM COMPANIES; STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS; STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; AND STATE FARM FIRE AND CASUALTY COMPANY, and for her cause of action would respectfully show the Court and jury as follows:

### I.
### Discovery Control Plan

Pursuant to Rule 190 of the Texas Rules of Civil Procedure, Plaintiff intends to conduct discovery under Level II control plan.

### II.
### Parties

Plaintiff CHRISTA CARTER CHAMPION is a resident of 6078A Averill Way, Dallas, Texas 75225.

EXHIBIT
A

Defendants, STATE FARM COMPANIES (hereinafter referred to as "State Farm") is a domestic corporation authorized to engage in the insurance industry within the State of Texas. Service of process may be made on this Defendant by serving its registered agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, 78701-3218.

Defendants, STATE FARM COUNTY MUTUAL INSURANCE COMPANY OF TEXAS (hereinafter referred to as "State Farm") is a domestic corporation authorized to engage in the insurance industry within the State of Texas. Service of process may be made on this Defendant by serving its registered agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, 78701-3218.

Defendants, STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY (hereinafter referred to as "State Farm") is a foreign corporation authorized to engage in the insurance industry within the State of Texas. Service of process may be made on this Defendant by serving its registered agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, 78701-3218.

Defendants, STATE FARM FIRE AND CASUALTY COMPANY (hereinafter referred to as "State Farm") is a foreign corporation authorized to engage in the insurance industry within the State of Texas. Service of process may be made on this Defendant by serving its registered agent for service, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, 78701-3218.

### III.

### Jurisdiction and Venue

Plaintiff brings this action for breach of contract under Article 21.21 of the Texas Insurance Code. The original contract between the parties was signed in Texarkana, Bowie County, Texas. The amount in controversy exceeds the minimum jurisdictional limits of this Court. Venue is

proper in Bowie County, Texas pursuant to §15.002 of the Texas Civil Practice and Remedies Code. Upon proper service of the Defendants, this Court has jurisdiction and venue is proper.

## IV.
### Statutory Authority

This suit is brought, in part, under the authority of Texas Insurance Code Article 21.21. §16. This suit is also brought, in part, under the authority of Texas Business and Commerce Code §17.41, commonly known as the Deceptive Trade Practices-Consumer Protection Act and referred herein after as the "DTPA."

## V.
### Relief Sought

Pursuant to Rule 47 of the Texas Rules of Civil Procedure, Plaintiff CHRISTA CARTER CHAMPION seeks "only monetary relief of over $100,000 but not more than $200,000, including damages of any kind, penalties, costs, expenses, pre-judgment interest and attorney's fees.

## VI.
### The Insurance Policy

The insurance policy was originally issued on December 3, 2010 to Plaintiff, CHRISTA CARTER CHAMPION.  The insurance policy, with number 72BR63315, was a Renters Policy insuring Plaintiff's contents at the residence located at 4101 Texas Boulevard, Texarkana, Bowie County, Texas 75503. A copy of the insurance policy is attached hereto as Exhibit "A".

## VII.
### The Loss

Plaintiff, CHRISTA CARTER CHAMPION is the owner of a Renters Policy (hereinafter referred to as "the Policy"), which was issued by State Farm. Plaintiff owns the insured contents of the residence located at the property, which is specifically located at 4101 Texas Boulevard, Texarkana, Bowie County, Texas 75503, in Bowie County (hereinafter referred to as "the

Property.") Defendant, STATE FARM sold the Policy insuring the Plaintiff, CHRISTA CARTER CHAMPION personal property on December 3, 2010.

On or about December 9, 2013, a fire erupted at the Property, causing severe damage to home and all of the Plaintiffs' contents at the Property. Plaintiff, CHRISTA CARTER CHAMPION submitted the Personal Property Inventory Forms to Defendant, STATE FARM which outlined all of the contents that were damaged in the fire at the Property. Plaintiff requested that Defendant, STATE FARM cover the cost of repair of all the contents under the Policy. Defendant, STATE FARM paid for a portion of the Property contents Plaintiff listed on the Personal Property Inventory Forms. Defendant, STATE FARM refused to pay for a large portion of the Property contents Plaintiff, CHRISTA CARTER CHAMPION listed on the Personal Property Inventory Forms.

Defendant, STATE FARM has refused to acknowledge the extensive and obvious damage to the contents of the Property. Plaintiff, CHRISTA CARTER CHAMPION provided a complete list of contents that were located on the Property to Defendant, STATE FARM on the Personal Property Inventory Forms over a year ago.

Defendant, STATE FARM set about to deny and/or underpay on properly covered damages. As a result of these Defendant, STATE FARMs unreasonable investigation of the claim, including not providing full coverage for the damages sustained by Plaintiff, CHRISTA CARTER CHAMPION, as well as undervaluing the damages during their investigation and thus denying adequate and sufficient payment to Plaintiff to repair the contents at the Property, Plaintiffs 'claim was improperly adjusted. To this date, Plaintiff, CHRISTA CARTER CHAMPION has yet to receive the full payment to which she is entitled under the Policy.

As detailed in the paragraphs below, Defendant, STATE FARM wrongfully denied Plaintiffs' claim for repairs of the contents under the Policy, even though the Policy provided coverage for losses such as those suffered by Plaintiff. Furthermore, Defendant, STATE FARM underpaid some of Plaintiff, CHRISTA CARTER CHAMPION claims by not providing full coverage for the damages sustained by Plaintiff, CHRISTA CARTER CHAMPION, as well as undervaluing the damages during its investigation. To date, Defendant, STATE FARM continues to delay in the payment for the damages to the contents under the Policy As such, Plaintiff, CHRISTA CARTER CHAMPION have not been paid in full for the damages to the contents of the Property.

Defendant, STATE FARM failed to perform its contractual duties to adequately compensate Plaintiff, CHRISTA CARTER CHAMPION under the terms of the Policy. Specifically, it refused to pay the full proceeds of the Policy, although due demand was made for proceeds to be paid in an amount sufficient to cover the damaged contents as specified under the Policy, and all conditions precedent to recovery upon the Policy had been carried out and accomplished by Plaintiff, CHRISTA CARTER CHAMPION. Defendant, STATE FARM's conduct constitutes a breach of the insurance contract between Defendant, STATE FARM and Plaintiff, CHRISTA CARTER CHAMPION. Defendant, STATE FARM failed to make an attempt to settle Plaintiff, CHRISTA CARTER CHAMPION'S claim in a fair manner, although they were aware of their liability to Plaintiff, CHRISTA CARTER CHAMPION under the Policy. Defendant, STATE FARM' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices, TEX. INS. CODE §541.060(a)(2)(A).

Defendant, STATE FARM failed to explain to Plaintiff, CHRISTA CARTER CHAMPION the reason for their offer of an inadequate settlement. Specifically, Defendant,

STATE FARM failed to offer Plaintiff, CHRISTA CARTER CHAMPION adequate compensation, without any explanation why full payment was not being made. Furthermore, Defendant, STATE FARM did not communicate that any future settlements or payments would be forthcoming to pay for the entire losses covered under the Policy, nor did they provide any explanation for the failure to adequately settle Plaintiff, CHRISTA CARTER CHAMPIONS' claim. Defendant, STATE FARM'S conduct is a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(3). Defendant, STATE FARM failed to affirm or deny coverage of Plaintiff, CHRISTA CARTER CHAMPIONS' claim within a reasonable time. Specifically, Plaintiff, CHRISTA CARTER CHAMPIONS did not receive timely indication of acceptance or rejection, regarding the full and entire claim, in writing from Defendant, STATE FARM and Defendant's conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(4).

Defendant, STATE FARM refused to fully compensate Plaintiffs, under the terms of the Policy, even though Defendant, STATE FARM failed to conduct a reasonable investigation. Specifically, Defendant, STATE FARM performed an outcome-oriented investigation of Plaintiffs' claim, which resulted in a biased, unfair, and inequitable evaluation of Plaintiffs' losses of the contents on the Property. Defendant, STATE FARM' conduct constitutes a violation of the Texas Insurance Code, Unfair Settlement Practices. TEX. INS. CODE §541.060(a)(7). Defendant, STATE FARM failed to meet its obligations under the Texas Insurance Code regarding timely acknowledging Plaintiffs' claim, beginning an investigation of Plaintiffs' claim, and requesting all information reasonably necessary to investigate Plaintiffs' claim, within the statutorily mandated time of receiving notice of Plaintiffs' claim. Defendant, STATE FARM's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.055.

Defendant, STATE FARM failed to accept or deny Plaintiffs' full and entire claim within the statutorily mandated time of receiving all necessary information. State Farm's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.056.

28. Defendant State Farm failed to meet its obligations under the Texas Insurance Code regarding payment of claim without delay. Specifically, it has delayed full payment of

Plaintiffs' claim longer than allowed and, to date; Plaintiffs have not received full payment for their claim. State Farm's conduct constitutes a violation of the Texas Insurance Code, Prompt Payment of Claims. TEX. INS. CODE §542.058.

From and after the time Plaintiffs' claim was presented to Defendant, STATE FARM, the liability of Defendant, STATE FARM to pay the full claim in accordance with the terms of the Policy was reasonably clear. However, Defendant, STATE FARM has refused to pay Plaintiff, CHRISTA CARTER CHAMPION in full, despite there being no basis whatsoever on which a reasonable insurance company would have relied to deny the full payment. Defendant, STATE FARM'S conduct constitutes a breach of the common law duty of good faith and fair dealing. Defendant, STATE FARM knowingly or recklessly made false representations, as described above, as to material facts and/or knowingly concealed all or part of material information from Plaintiff, CHRISTA CARTER CHAMPION.

Plaintiff, CHRISTA CARTER CHAMPION's experience is not an isolated case. The acts and omissions Defendant, STATE FARM committed in this case, or similar acts and omissions, occur with such frequency that they constitute a general business practice of Defendant, STATE FARM with regard to handling these types of claims. Defendant, STATE FARM'S entire process is unfairly designed to reach favorable outcomes for the company at the expense of the policyholders.

## VIII.
## Actionable Conduct

Defendants failed to evaluate and adjust Plaintiff's claim for benefits in good faith and failed to deal fairly with Plaintiff. Defendants failed and refused to evaluate the information and surrounding facts and continued to refuse to pay policy benefits to the Plaintiff. Defendants have persisted in denial of Plaintiff's claim for benefits even though a person of ordinary prudence and care would have done otherwise.

## IX.
## Causes of Action

The facts in the preceding paragraphs give rise to the following causes of action:

### A. Breach of Duty of Good Faith and Fair Dealing

As a result of the relationship of the parties created by the nature of the policy of insurance and the parties' unequal bargaining power, Defendants owed and owe to Plaintiff a duty to deal fairly and in good faith. Defendants have failed to deal in good faith. There was and is no reasonable basis for Defendants' denial of Plaintiff's claim for the full benefits payable under the policy. Defendants' actions were unfair because Plaintiff's losses were the type of losses Defendants promised to pay. Defendants thus breached their duty to deal fairly and in good faith with Plaintiff.

### B. Breach of Contract

The conduct of Defendants constitutes a breach of the contract of insurance between Plaintiff and Defendants. As a result of this breach, Plaintiff has suffered damages, all of which were reasonably foreseeable.

## C. Violations of the Texas Insurance Code

Defendants were engaged in the following practices in violation of the Texas Insurance Code: (1) Defendants failed to attempt in good faith to effectuate a prompt, fair, and equitable settlement of Plaintiff's claim after liability under the insurance policy became reasonably clear; (2) Defendants have refused to pay a claim without conducting a reasonable investigation with respect to the claim. This conduct constitutes unfair settlement practices, as defined in Article 21.21 §4(10) of the Texas Insurance Code, which are actionable pursuant to §16(a) of the Texas Insurance Code.

## X.
### Causation: Actual Damages

The conduct described above was a producing, proximate, and direct cause of actual damages to Plaintiff. These damages include, but are not limited to, the full benefits payable under the policy together with the out of pocket expenses incurred by Plaintiff. These damages also include mental anguish and distress suffered by Plaintiff. Plaintiff seeks pre-judgment interest at the highest rate allowed by law. The amount of actual damages which should be awarded exceeds the minimum jurisdictional limits of the Court.

## XI.
### Jury Demand

Plaintiff demands a trial by jury.

## XII.
### Prayer

**WHISEFORE, PREMISES CONSIDERED,** Plaintiff requests that the Defendants be cited to appear and answer herein, and upon final trial thereof, Plaintiff has and recover of and from Defendants for damages as set forth above; pre- and post-judgment interest at the highest

lawful rate, Court costs, and attorney's fees, and such other and further relief, whether special or

general in nature, at law or in equity, to which he may show  herself to be justify entitled and

within the jurisdictional limits of this Court.


Respectfully submitted,


Christa Carter Champion, *Pro Se*
6078A Averill Way
Dallas, Texas 75225
Telephone: (903) 277-4374
ccarterchamp@aol.com

# TABLE OF CONTENTS

## DECLARATIONS
Your Name
Location of Your Residence
Policy Period
Coverages
Limits of Liability
Deductibles

Begins on Page

DECLARATIONS CONTINUED ............................................1

DEFINITIONS ............................................1

SECTION I - YOUR PROPERTY
   COVERAGES ............................................3
      Coverage B - Personal Property ............................3
      Coverage C - Loss of Use ............................4
      Additional Coverages............................4
      Inflation Coverage ............................6
   LOSSES INSURED ............................................7
   LOSSES NOT INSURED ............................................9
   LOSS SETTLEMENT............................................10
   CONDITIONS............................................11

SECTION II - YOUR LIABILITY
   COVERAGES ............................................13
      Coverage L - Personal Liability ............................13
      Coverage M - Medical Payments to Others............................13
      Additional Coverages............................13
   EXCLUSIONS ............................................14
   CONDITIONS............................................16

SECTION I AND SECTION II - CONDITIONS ............................17

OPTIONAL POLICY PROVISIONS ............................................19

Includes copyrighted material of State Farm Fire and Casualty Company.
Copyright, State Farm Fire and Casualty Company, 1983,


EXHIBIT
A

 **FE-3535 RENTERS POLICY ENDORSEMENT (Texas)**

## DEFINITIONS

Definitions 8 and 9. are replaced by the following:

8. **"motor vehicle"**, when used in Section II of this policy, means:

   a. a land motor vehicle designed for travel on public roads or subject to motor vehicle registration;

   b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration;

   c. a "recreational vehicle" while off an insured location. "Recreational vehicle" means a motorized vehicle designed for recreation principally off public roads that is owned or leased by an insured. This includes, but is not limited to, a motorized all terrain vehicle, amphibious vehicle, dune buggy, go-cart, golf cart, snowmobile, trailbike, minibike and personal assistive mobility device. "Leased" does not include temporary rental;

   d. a "locomotive" while off an insured location. "Locomotive" means a self-propelled vehicle for pulling or pushing freight or passenger cars on tracks that is large enough to carry a person and is owned or leased by an insured. "Leased" does not include temporary rental;

   e. a bulldozer, track loader, backhoe, high-hoe, trencher, grader, crane, self-propelled scraper, excavator, pipe-layer, cherry picker, telehandler, logging vehicle, mining vehicle or road building vehicle that is owned or leased by an insured while off an insured location. "Leased" does not include temporary rental; and

   f. any vehicle while being towed or pushed by or carried on a vehicle included in a., b., c., d. or e.

   The following are not motor vehicles:

   a. a boat, camp, home or utility trailer not being towed or pushed by or carried on a vehicle included in a., b., c., d. or e. above;

   b. a motorized land vehicle in dead storage on an insured location;

   c. a motorized golf cart while used for golfing purposes;

   d. a motorized vehicle or trailer designed to assist the handicapped that is not designed for travel on public roads or subject to motor vehicle registration; or

   e. a commercially manufactured 2, 3 or 4 wheeled personal conveyance powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour.

9. **"occurrence"**, when used in Section II of this policy, means an accident, including exposure to conditions, which first results in:

   a. bodily injury; or

   b. property damage;

   during the policy period. All bodily injury and property damage resulting from one accident, series of related accidents or from continuous and repeated exposure to the same general conditions is considered to be one occurrence.

Definition 13. is added:

13. **"State Farm Companies"** means one or more of the following:

   a. State Farm Mutual Automobile Insurance Company;

   b. State Farm Fire and Casualty Company; and

   c. subsidiaries or affiliates of either a. or b. above.

## SECTION I – COVERAGES

### COVERAGE B – PERSONAL PROPERTY

**Special Limits of Liability** is replaced by the following:

**Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

a. $200 on money, coins and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware and platinum;

b. $1,500 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $750 on such property away from the residence premises.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

c. $1,000 on securities, checks, cashiers checks, travelers checks, money orders, gift certificates, gift cards, rechargeable debit cards, phone cards and

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

d. $1,500 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

e. $1,500 on trailers not used with watercraft;

f. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

g. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

h. $2,500 for loss by theft of firearms;

i. $2,500 for loss by theft of silverware and goldware;

j. $5,000 on electronic data processing system equipment, including but not limited to mobile personal communication equipment, global positioning systems, mobile personal electronic devices used for the reproduction of sound, and standard media or non-media equipment for use with the above devices;

k. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article; and

l. $500 on commercially manufactured 2, 3 or 4 wheeled personal conveyances powered only by or assisted by an unmodified motor or engine with a manufacturer's power rating of no more than 1 horsepower and capable of a top speed of no more than 20 miles per hour. This does not include those not licensed for use on public highways which are designed for assisting the handicapped.

Item 2., Property Not Covered, is replaced by the following:

2. **Property Not Covered.** We do not cover:

   a. articles separately described and specifically insured in this or any other insurance;

   b. animals, birds or fish;

   c. any engine or motor-propelled vehicle or machine, including the parts, designed for movement on land, except as provided in Special Limits of Liability, item l. We do cover those not licensed for use on public highways which are:

      (1) used solely to service the insured location; or

      (2) designed for assisting the handicapped;

   d. devices or instruments for the recording or reproduction of video or sound permanently attached to an engine or motor-propelled vehicle. We do not cover tapes, discs, wires, videos or

other media that may be used with these devices or instruments while in the vehicle;

   e. aircraft and parts, except model or hobby aircraft not used or designed to carry people or cargo;

   f. property of roomers, boarders, tenants and other residents not related to an insured. We do cover property of roomers, boarders and other residents related to an insured;

   g. property regularly rented or held for rental to others by an insured. This exclusion does not apply to property of an insured in a sleeping room rented to others by an insured;

   h. property rented or held for rental to others away from the residence premises;

   i. any radio devices or transmitters, global positioning systems, radar or laser detectors, antennas and all other similar equipment permanently attached to an engine or motor-propelled vehicle;

   j. books or records of accounts receivable, abstracts or other journals, architectural or technical drawings, card index systems or other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records;

   k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market;

   l. purchased or created data, sound or video that cannot be replaced with like kind and quality on the current retail market which is transferred or downloaded onto mobile communication equipment, global positioning systems or electronic devices used for the reproduction of video or sound;

   m. contraband, or any property used in the course of illegal consumption, possession, import, export or trade; and

   n. outdoor hardscape property used for aesthetic purposes except as provided in SECTION I – ADDITIONAL COVERAGES.

**COVERAGE C – LOSS OF USE**

Item 3., Prohibited Use, is replaced by the following:

3. **Prohibited Use.** We cover Additional Living Expense and Fair Rental Value, for a continuous period not to exceed two weeks, beginning when a civil

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

FE-3535
Page 3 of 6

authority issues an order of evacuation or prohibits your use of the residence premises, provided that:

a. direct physical damage occurs to any property, other than covered property located on the residence premises, arising from a cause of loss that would be a Loss Insured under this policy if the damage had occurred to property on the residence premises;

b. the residence premises is within one mile of property damaged by a cause of loss identified in 3.a. above; and

c. the action of the civil authority is taken in response to:

   (1) dangerous physical conditions resulting from the continuation of the cause of loss identified in 3.a. above;

   (2) dangerous physical conditions resulting from the damage caused by the cause of loss identified in 3.a. above; or

   (3) the need to gain free access to property damaged by the cause of loss identified in 3.a. above.

We do not cover loss or expense due to cancellation of a lease or agreement.

## SECTION I – ADDITIONAL COVERAGES

Items 1., 3. and 11. are replaced by the following:

1. **Debris Removal.** We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

   When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, Item 3. Trees, Shrubs and Landscaping.

3. **Trees, Shrubs and Landscaping.** We cover outdoor:

   a. trees, shrubs, live or artificial plants, and lawns;

   b. artificial grass; and

   c. hardscape property used for aesthetic purposes not permanently affixed to realty;

   on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 10% of the amount shown in the **Declarations** for COVERAGE B – PERSONAL PROPERTY. We will not pay more than $750 for any one outdoor tree, shrub, plant or hardscape item, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

   Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

   The collapse must be directly and immediately caused only by one or more of the following:

   a. perils described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

   b. decay, deterioration, insect damage or vermin damage, all that are hidden from view, of a:

      (1) connector; or

      (2) structural member of a building;

      unless the presence of such damage is known to an insured prior to collapse;

   c. weight of contents, equipment, animals or people;

   d. weight of ice, snow, sleet or rain which collects on a roof, porch or deck; or

   e. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

   Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf, dock, trellis or antenna or its supporting structure is not included under items b., c., d., and e. unless the loss is the direct and immediate cause of the collapse of the building.

   This coverage does not increase the limit applying to the damaged property.

## SECTION I – LOSSES INSURED

## COVERAGE B – PERSONAL PROPERTY

Items 9.b.(3)(c) and 15. are replaced by the following:

9. b. (3) (c) of securities, checks, cashiers checks, travelers checks, money orders, gift

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

certificates, gift cards, rechargeable debit cards, phone cards and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

15. **Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current.** We will pay up to $1,500 under this peril for each damaged item described above.

## SECTION I – LOSSES NOT INSURED

Item 1.c. is replaced by the following:

1. c. **Water,** meaning:

(1) flood, surface water, waves (including tidal wave, tsunami, and seiche), tides, tidal water, overflow of any body of water, or spray or surge from any of these, all whether driven by wind or not;

(2) water or sewage from outside the **residence premises** plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area;

(3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure; or

(4) material carried or otherwise moved by any of the water, as described in paragraphs (1) through (3) above.

However, we do insure for any direct loss by fire, explosion or theft resulting from water, provided the resulting loss is itself a Loss Insured.

## SECTION I – CONDITIONS

Item 1., Insurable Interest and Limit of Liability, is replaced by the following:

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we will not be liable:

a. to the insured for an amount greater than the insured's interest; or

b. for more than the applicable limit of liability.

**Fire Insurance; Total Loss Of Real Property.** A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be

a liquidated demand against the company for the full amount of such policy. This subsection does not apply to personal property.

The following is added to Item 2., **Your Duties After Loss:**

f. If the loss is caused by windstorm or hail in the catastrophe area as defined under Texas law, you must file a claim with us not later than one year after the date of the loss that is the subject of the claim unless you show good cause for not filing the claim within this time period.

Item 7., **Suit Against Us,** is replaced by the following:

7. **Suit Against Us.** No suit or action can be brought unless:

a. there has been compliance with the policy provisions; and



b. except as provided in item c. below, suit or action brought against us is started within two years and one day after the cause of action accrues;

c. with respect to a loss caused by windstorm or hail in the catastrophe area as defined under Texas law, suit or action brought against us is started within the earlier of:

(1) two years from the date we accept or reject the claim; or

(2) three years from the date of the loss that is the subject of the claim.

## SECTION II – LIABILITY COVERAGES

## SECTION II – ADDITIONAL COVERAGES

Items 1.a., 1.c. and 1,d. are replaced by the following:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an insured in suits we defend. Taxed costs do not include attorney fees;

c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $200 per day for aiding us in the investigation or defense of claims or suits;

d. interest the insured is legally liable to pay on damages payable under Coverage L above before a judgment, but only the interest on the lesser of:

(1) that part of the damages we pay; or

(2) the Coverage L limit; and

## SECTION II – CONDITIONS

Item 1., Limit of Liability, is replaced by the following:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

CONTINUED

1. **Limit of Liability.** The Coverage L limit is shown in the Declarations. This is the limit for all damages from each occurrence for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

   The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

The following condition is added to item 4., **Duties of an Injured Person – Coverage M:**

d. the injured person, or, when appropriate, someone acting on behalf of that person, shall:

   (1) provide us with any required authorizations we need to obtain information reasonably related to the injury(ies) listed in the claim; and

   (2) submit to us all information reasonably related to the injury(ies) listed in the claim that we need to comply with state or federal law.

## SECTION I AND SECTION II – CONDITIONS

Item 11., **Right to Inspect**, is replaced by the following:

11. **Right to Inspect.** We have the right but are not obligated to perform the following:

    a. make inspections and surveys of the **insured location** at any time;

    b. provide you with reports on conditions we find; or

    c. recommend changes.

    Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

    We do not:

    a. make safety inspections;

    b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

    c. warrant that conditions are safe or healthful; or

    d. warrant that conditions comply with laws, regulations, codes or standards.

    This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

The following conditions are added:

12. **Premium.**

    a. Unless as otherwise provided by an alternative payment plan in effect with the State Farm Companies with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued Declarations.

    b. The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

    c. The premium for this policy may vary based upon:

       (1) the purchase of other products or services from the **State Farm Companies;**

       (2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

       (3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

    d. Your purchase of this policy may allow:

       (1) you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies,** subject to their applicable eligibility rules; or

       (2) the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies**. The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

13. **Change of Policy Address.** We may change the named **insured's** policy address as shown in the Declarations and in our records to the most recent address provided to us by:

    a. you; or

    b. the United States Postal Service.

## OPTIONAL POLICY PROVISIONS

**Option BP – Business Property** is replaced by the following:

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

CONTINUED

# RENTERS POLICY

## DECLARATIONS CONTINUED

We agree to provide the insurance described in this policy:

1. based on your payment of premium for the coverages you chose;

2. based on your compliance with all applicable provisions of this policy; and

3. in reliance on your statements in these Declarations.

You agree, by acceptance of this policy, that:

1. you will pay premiums when due and comply with the provisions of the policy;

2. the statements in these Declarations are your statements and are true;

3. we insure you on the basis your statements are true; and

4. this policy contains all of the agreements between you and us and any of our agents.

Unless otherwise indicated in the application, you state that during the three years preceding the time of your application for this insurance your Loss History and Insurance History are as follows:

1. Loss History: you and the members of your household have not had any losses which were paid under prior policies; and

2. Insurance History: you have not had any insurer or agency cancel or refuse to issue or renew similar insurance to you or any household member.

## DEFINITIONS

"You" and "your" mean the "named insured" shown in the Declarations. Your spouse is included if a resident of your household. "We", "us" and "our" mean the Company shown in the Declarations.

Certain words and phrases are defined as follows:

1. "bodily injury" means physical harm to a person, including any resulting sickness or disease. This includes the required care, loss of services and death resulting therefrom.

   Bodily injury does not include:

   a. the transmission of a communicable disease by any insured to any other person;

   b. the exposure to any communicable disease by any insured to any other person; or

   c. emotional distress, mental anguish, humiliation, mental injury, or similar injury unless it arises out of actual physical injury to some person.

2. "business" means a trade, profession or occupation. This includes farming.

3. "business day" means a day other than a Saturday, Sunday or holiday recognized by the state of Texas.

4. "communicable disease" means bacteria, parasite, virus or other organism transmissible from person to person due to direct contact with an affected person or that person's discharges.

5. "Declarations" means the policy Declarations, any amended Declarations, the most recent renewal notice or certificate, an Evidence of Insurance form or any endorsement changing any of these.

6. "insured" means you and, if residents of your household:

   a. your relatives; and

   b. any other person under the age of 21 who is in the care of a person described above.

   Under Section II, "insured" also means:

   c. with respect to animals or watercraft to which this policy applies, the person or organization legally responsible for them. However, the animal or

1

watercraft must be owned by you or a person included in 6.a. or 6.b. A person or organization using or having custody of these animals or watercraft in the course of a business, or without permission of the owner, is not an insured; and

d. with respect to any vehicle to which this policy applies, any person while engaged in your employment or the employment of a person included in 6.a. or 6.b.

7. "insured location" means:

a. the residence premises;

b. the part of any other premises, other structures and grounds used by you as a residence. This includes premises, structures and grounds you acquire while this policy is in effect for your use as a residence;

c. any premises used by you in connection with the premises included in 7.a. or 7.b.;

d. any part of a premises not owned by an insured but where an insured is temporarily residing;

e. land owned by or rented to an insured on which a one or two family dwelling is being constructed as a residence for an insured;

f. individual or family cemetery plots or burial vaults owned by an insured;

g. any part of a premises occasionally rented to an insured for other than business purposes;

h. vacant land owned by or rented to an insured. This does not include farm land; and

i. farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

8. "motor vehicle", when used in Section II of this policy, means:

a. a motorized land vehicle designed for travel on public roads or subject to motor vehicle registration. A motorized land vehicle in dead storage on an insured location is not a motor vehicle;

b. a trailer or semi-trailer designed for travel on public roads and subject to motor vehicle registration. A boat, camp, home or utility trailer not being towed by or carried on a vehicle included in 8.a. is not a motor vehicle;

c. a motorized golf cart, snowmobile, motorized bicycle, motorized tricycle, all-terrain vehicle or any other similar type equipment owned by an insured and designed or used for recreational or utility purposes off public roads, while off an insured location. A motorized golf cart while used for golfing purposes is not a motor vehicle; and

d. any vehicle while being towed by or carried on a vehicle included in 8.a., 8.b. or 8.c.

9. "occurrence", when used in Section II of this policy, means an accident, including exposure to conditions, which results in:

a. bodily injury; or

b. property damage;

during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence.

10. "property damage" means physical damage to or destruction of tangible property, including loss of use of this property. Theft or conversion of property by any insured is not property damage.

11. "residence employee" means an employee of an insured who performs duties, including household or domestic services, in connection with the maintenance or use of the residence premises. This includes employees who perform similar duties elsewhere for you. This does not include employees while performing duties in connection with the business of an insured.

12. "residence premises" means:

a. the one, two, three or four-family dwelling, other structures and grounds; or

b. that part of any other building;

where you reside and which is shown in the Declarations.

2                                    FP-7954 TX

## SECTION I - COVERAGES

**COVERAGE B - PERSONAL PROPERTY**

1. **Property Covered.** We cover personal property owned or used by an insured while it is anywhere in the world. This includes structures not permanently attached to or otherwise forming a part of the realty. At your request, we will cover personal property owned by others while the property is on the part of the residence premises occupied exclusively by an insured. At your request, we will also cover personal property owned by a guest or a residence employee, while the property is in any other residence occupied by an insured.

   We cover personal property usually situated at an insured's residence, other than the residence premises, for up to $1,000 or 10% of the Coverage B limit, whichever is greater. This limitation does not apply to personal property in a newly acquired principal residence for the first 30 days after you start moving the property there. If the residence premises is a newly acquired principal residence, personal property in your immediate past principal residence is not subject to this limitation for the first 30 days after the inception of this policy.

   **Special Limits of Liability.** These limits do not increase the Coverage B limit. The special limit for each of the following categories is the total limit for each loss for all property in that category:

   a. $200 on money, coins and medals, including any of these that are a part of a collection, bank notes, bullion, gold other than goldware, silver other than silverware and platinum;

   b. $1,000 on property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, while on the residence premises. This coverage is limited to $250 on such property away from the residence premises.

   Electronic data processing system equipment or the recording or storage media used with that equipment is not included under this coverage;

   c. $1,000 on securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports and tickets;

   d. $1,000 on watercraft of all types and outboard motors, including their trailers, furnishings and equipment;

   e. $1,000 on trailers not used with watercraft;

   f. $1,000 for loss by theft of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

   g. $2,500 on stamps, trading cards and comic books, including any of these that are a part of a collection;

   h. $2,500 for loss by theft of firearms;

   i. $2,500 for loss by theft of silverware and goldware;

   j. $5,000 on electronic data processing system equipment and the recording or storage media used with that equipment. There is no coverage for said equipment or media while located away from the residence premises except when said equipment or media are removed from the residence premises for the purpose of repair, servicing or temporary use. An insured student's equipment and media are covered while at a residence away from home; and

   k. $5,000 on any one article and $10,000 in the aggregate for loss by theft of any rug, carpet (except wall-to-wall carpet), tapestry, wall-hanging or other similar article.

2. **Property Not Covered.** We do not cover:

   a. articles separately described and specifically insured in this or any other insurance;

   b. animals, birds or fish;

   c. any engine or motor propelled vehicle or machine, including the parts, designed for movement on land. We do cover those not licensed for use on public highways which are:

3

(1) used solely to service the insured location; or

(2) designed for assisting the handicapped;

d. devices or instruments for the recording or reproduction of sound permanently attached to an engine or motor propelled vehicle. We do not cover tapes, wires, records or other mediums that may be used with these devices or instruments while in the vehicle;

e. aircraft and parts, except model or hobby aircraft not used or designed to carry people or cargo;

f. property of roomers, boarders, tenants and other residents not related to an insured. We do cover property of roomers, boarders and other residents related to an insured;

g. property regularly rented or held for rental to others by an insured. This exclusion does not apply to property of an insured in a sleeping room rented to others by an insured;

h. property rented or held for rental to others away from the residence premises;

i. any citizens band radios, radio telephones, radio transceivers, radio transmitters, radar or laser detectors, antennas and other similar equipment permanently attached to an engine or motor propelled vehicle;

j. books of account, abstracts, drawings, card index systems and other records. This exclusion does not apply to any recording or storage media for electronic data processing. We will cover the cost of blank books, cards or other blank material plus the cost of labor you incur for transcribing or copying such records; or

k. recording or storage media for electronic data processing that cannot be replaced with other of like kind and quality on the current retail market.

COVERAGE C - LOSS OF USE

1. Additional Living Expense. When a Loss Insured causes the residence premises to become uninhabitable, we will cover the necessary increase in cost you incur to maintain your standard of living for up to 24 months. Our payment is limited to incurred costs for the shortest of: (a) the time required to repair or replace the premises; (b) the time required for your household to settle elsewhere; or (c) 24 months. This coverage is not reduced by the expiration of this policy.

2. Fair Rental Value. When a Loss Insured causes that part of the residence premises rented to others or held for rental by you to become uninhabitable, we will cover its fair rental value. Payment shall be for the shortest time required to repair or replace the part of the premises rented or held for rental, but not to exceed 12 months. This period of time is not limited by expiration of this policy. Fair rental value shall not include any expense that does not continue while that part of the residence premises rented or held for rental is uninhabitable.

3. Prohibited Use. When a civil authority prohibits your use of the residence premises because of direct damage to a neighboring premises by a Loss Insured, we will cover any resulting Additional Living Expense and Fair Rental Value. Coverage is for a period not exceeding two weeks while use is prohibited.

We do not cover loss or expense due to cancellation of a lease or agreement.

SECTION I - ADDITIONAL COVERAGES

The following Additional Coverages are subject to all the terms, provisions, exclusions and conditions of this policy.

1. Debris Removal. We will pay the reasonable expenses you incur in the removal of debris of covered property damaged by a Loss Insured. This expense is included in the limit applying to the damaged property.

When the amount payable for the property damage plus the debris removal exceeds the limit for the damaged property, an additional 5% of that limit is available for debris removal expense. This additional amount of insurance does not apply to Additional Coverage, item 3. Trees, Shrubs and Other Plants.

2. Temporary Repairs. If damage is caused by a Loss Insured, we will pay the reasonable and necessary cost you incur for temporary repairs to covered property to protect the property from further immediate damage or loss. This coverage does not increase the limit applying to the property being repaired.

4

FP-7954 TX

3, Trees, Shrubs and Other Plants. We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for direct loss caused by the following: Fire or lightning, Explosion, Riot or civil commotion, Aircraft, Vehicles (not owned or operated by a resident of the residence premises), Vandalism or malicious mischief or Theft.

The limit for this coverage, including the removal of debris, shall not exceed 10% of the limit of liability shown in the Declarations for COVERAGE B - PERSONAL PROPERTY. We will not pay more than $500 for any one outdoor tree, shrub or plant, including debris removal expense. This coverage may increase the limit otherwise applicable. We do not cover property grown for business purposes.

4, Property Removed. Covered property, while being removed from a premises endangered by a Loss Insured, is covered for any accidental direct physical loss. This coverage also applies to the property for up to 30 days while removed. We will also pay for reasonable expenses incurred by you for the removal and return of the covered property. This coverage does not increase the limit applying to the property being removed.

5, Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money.

a. We will pay up to $1,000 for:

(1) the legal obligation of an insured to pay because of the theft or unauthorized use of credit cards and bank fund transfer cards issued to or registered in an insured's name. If an insured has not complied with all terms and conditions under which the cards are issued, we do not cover use by an insured or anyone else;

(2) loss to an insured caused by forgery or alteration of any check or negotiable instrument; and

(3) loss to an insured through acceptance in good faith of counterfeit United States or Canadian paper currency.

No deductible applies to this coverage.

We will not pay more than the limit stated above for forgery or alteration committed by any one person.

This limit applies when the forgery or alteration involves one or more instruments in the same loss.

b. We do not cover loss arising out of business pursuits or dishonesty of an insured.

c. Defense:

(1) We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend claims or suits ends when the amount we pay for the loss equals our limit of liability.

(2) If claim is made or a suit is brought against an insured for liability under the Credit Card or Bank Fund Transfer Card coverage, we will provide a defense. This defense is at our expense by counsel of our choice.

(3) We have the option to defend at our expense an insured or an insured's bank against any suit for the enforcement of payment under the Forgery coverage.

6, Power Interruption. We cover accidental direct physical loss caused directly or indirectly by a change of temperature which results from power interruption that takes place on the residence premises. The power interruption must be caused by a Loss Insured occurring on the residence premises. The power lines off the residence premises must remain energized. This coverage does not increase the limit applying to the damaged property.

7, Refrigerated Products. Coverage B is extended to cover the contents of deep freeze or refrigerated units on the residence premises for loss due to power failure or mechanical failure. If mechanical failure or power failure is known to you, all reasonable means must be used to protect the property insured from further damage or this coverage is void. Power failure or mechanical failure shall not include:

a. removal of a plug from an electrical outlet; or

b. turning off an electrical switch unless caused by a Loss Insured.

This coverage does not increase the limit applying to the damaged property.

5

8. **Arson Reward.** We will pay $1,000 for information which leads to an arson conviction in connection with a fire loss to property covered by this policy. This coverage may increase the limit otherwise applicable. However, the $1,000 limit shall not be increased regardless of the number of persons providing information.

9. **Building Additions and Alterations.** We cover under Coverage B the building additions, alterations, fixtures, improvements or installations, made or acquired at your expense, to that part of the residence premises used exclusively by you. The limit for this coverage shall not exceed 15% of the limit of liability shown in the Declarations for COVERAGE B - PERSONAL PROPERTY. This is not an additional amount of insurance.

10. **Volcanic Action.** We cover direct physical loss to a covered building or covered property contained in a building resulting from the eruption of a volcano when the loss is directly and immediately caused by:

    a. volcanic blast or airborne shock waves;

    b. ash, dust or particulate matter; or

    c. lava flow,

    We will also pay for the removal of that ash, dust or particulate matter which has caused direct physical loss to a covered building or covered property contained in a building.

    One or more volcanic eruptions that occur within a 72-hour period shall be considered one volcanic eruption.

    This coverage does not increase the limit applying to the damaged property.

11. **Collapse.** We insure only for direct physical loss to covered property involving the sudden, entire collapse of a building or any part of a building.

    Collapse means actually fallen down or fallen into pieces. It does not include settling, cracking, shrinking, bulging, expansion, sagging or bowing.

    The collapse must be directly and immediately caused only by one or more of the following:

    a. perils described in SECTION I - LOSSES INSURED, COVERAGE B - PERSONAL PROP-

ERTY. These perils apply to covered building and personal property for loss insured by this Additional Coverage;

    b. hidden decay of a supporting or weight-bearing structural member of the building;

    c. hidden insect or vermin damage to a structural member of the building;

    d. weight of contents, equipment, animals or people;

    e. weight of ice, snow, sleet or rain which collects on a roof; or

    f. use of defective material or methods in the construction (includes remodeling or renovation) of the building, if the collapse occurs during the course of the construction of the building.

    Loss to an awning, fence, patio, pavement, swimming pool, underground pipe, flue, drain, cesspool, septic tank, foundation, retaining wall, bulkhead, pier, wharf or dock is not included under items b., c., d., e. and f. unless the loss is the direct and immediate cause of the collapse of the building.

    This coverage does not increase the limit applying to the damaged property.

12. **Locks.** We will pay the reasonable expenses you incur to re-key locks on exterior doors of the dwelling located on the residence premises, when the keys to those locks are a part of a covered theft loss.

    No deductible applies to this coverage.

## INFLATION COVERAGE

The limit of liability shown in the Declarations for Coverage B will be increased at the same rate as the increase in the Inflation Coverage Index shown in the Declarations.

To find the limit on a given date:

1. divide the index on that date by the index as of the effective date of this Inflation Coverage provision; then

2. multiply the resulting factor by the limit of liability for Coverage B.

The limit of liability will not be reduced to less than the amount shown in the Declarations.

FP-7954 TX

If during the term of this policy the Coverage B limit of liability is changed at your request, the effective date of this

Inflation Coverage provision is changed to coincide with the effective date of such change.

## SECTION I - LOSSES INSURED

### COVERAGE B - PERSONAL PROPERTY

We insure for accidental direct physical loss to property described in Coverage B caused by the following perils, except as provided in SECTION I - LOSSES NOT INSURED:

1. Fire or lightning.

2. Windstorm or hail. This peril does not include loss to property contained in a building caused by rain, snow, sleet, sand or dust. This limitation does not apply when the direct force of wind or hail damages the building causing an opening in a roof or wall and the rain, snow, sleet, sand or dust enters through this opening.

   This peril does not include loss to outdoor antennas caused directly or indirectly by ice (other than hail), snow or sleet, all whether driven by wind or not.

   This peril includes loss to watercraft of all types and their trailers, furnishings, equipment, and outboard motors, only while inside a fully enclosed building.

3. Explosion.

4. Riot or civil commotion.

5. Aircraft, including self-propelled missiles and spacecraft.

6. Vehicles, meaning impact by a vehicle.

7. Smoke, meaning sudden and accidental damage from smoke.

   This peril does not include loss caused by smoke from agricultural smudging or industrial operations.

8. Vandalism or malicious mischief, meaning only willful and malicious damage to or destruction of property.

9. Theft, including attempted theft and loss of property from a known location when it is probable that the property has been stolen.

   This peril does not include:

a. loss of a precious or semi-precious stone from its setting;

b. loss caused by theft:

   (1) committed by an insured or by any other person regularly residing on the insured location. Property of a student who is an insured is covered while located at a residence away from home, if the theft is committed by a person who is not an insured;

   (2) in or to a dwelling under construction or of materials and supplies for use in the construction until the dwelling is completed and occupied; or

   (3) from the part of a residence premises rented to others:

      (a) caused by a tenant, members of the tenant's household, or the tenant's employees;

      (b) of money, bank notes, bullion, gold, goldware, silver, silverware, pewterware, platinum, coins and medals;

      (c) of securities, checks, cashier's checks, traveler's checks, money orders and other negotiable instruments, accounts, deeds, evidences of debt, letters of credit, notes other than bank notes, manuscripts, passports, tickets and stamps; or

      (d) of jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones;

c. loss caused by theft that occurs away from the residence premises of:

   (1) property while at any other residence owned, rented to, or occupied by an insured, except while an insured is temporarily residing there. Property of a student who is an insured is covered while at a residence away from home;

7

(2) watercraft of all types, including their furnishings, equipment and outboard motors; or

(3) trailers and campers designed to be pulled by or carried on a vehicle.

If the residence premises is a newly acquired principal residence, property in the immediate past principal residence shall not be considered property away from the residence premises for the first 30 days after the inception of this policy.

10. Falling objects. This peril does not include loss to property contained in a building unless the roof or an exterior wall of the building is first damaged by a falling object. Damage to the falling object itself is not included.

11. Weight of ice, snow or sleet which causes damage to property contained in a building.

12. Sudden and accidental discharge or overflow of water or steam from within a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or from within a household appliance.

This peril does not include loss:

a. to the system or appliance from which the water or steam escaped;

b. caused by or resulting from freezing;

c. caused by or resulting from water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

d. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

13. Sudden and accidental tearing asunder, cracking, burning or bulging of a steam or hot water heating system, an air conditioning or automatic fire protective sprinkler system, or an appliance for heating water.

This peril does not include loss:

a. caused by or resulting from freezing; or

b. caused by or resulting from continuous or repeated seepage or leakage of water or steam which occurs over a period of time and results in deterioration, corrosion, rust, mold, or wet or dry rot.

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system, or of a household appliance.

This peril does not include loss on the residence premises while the dwelling is vacant, unoccupied or being constructed, unless you have used reasonable care to:

a. maintain heat in the building; or

b. shut off the water supply and drain the system and appliances of water.

15. Sudden and accidental damage to electrical appliances, devices, fixtures and wiring from an increase or decrease of artificially generated electrical current. We will pay up to $1,000 under this peril for each damaged item described above.

16. Breakage of glass or safety glazing material which is part of a building, storm door or storm window, and is covered under SECTION I - ADDITIONAL COVERAGES, Building Additions and Alterations.

This peril does not include loss on the residence premises if the residence has been vacant for more than 30 consecutive days immediately before the loss.

17. Breakage of glass, meaning damage to personal property caused by breakage of glass which is a part of a building on the residence premises. There is no coverage for loss or damage to the glass.

8

FP-7954 TX

## SECTION I - LOSSES NOT INSURED

1. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes of the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these;

   a. Ordinance or Law, meaning enforcement of any ordinance or law regulating the construction, repair or demolition of a building or other structure.

   b. Earth Movement, meaning the sinking, rising, shifting, expanding or contracting of earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. Earth movement also includes volcanic explosion or lava flow, except as specifically provided in SECTION I - ADDITIONAL COVERAGES, Volcanic Action.

   However, we do insure for any direct loss by fire resulting from earth movement, provided the resulting fire loss is itself a Loss Insured.

   c. Water Damage, meaning:

      (1) flood, surface water, waves, tidal water, tsunami, seiche, overflow of a body of water, or spray from any of these, all whether driven by wind or not;

      (2) water or sewage from outside the residence premises plumbing system that enters through sewers or drains, or water which enters into and overflows from within a sump pump, sump pump well or any other system designed to remove subsurface water which is drained from the foundation area; or

      (3) water below the surface of the ground, including water which exerts pressure on, or seeps or leaks through a building, sidewalk, driveway, foundation, swimming pool or other structure.

   However, we do insure for any direct loss by fire, explosion or theft resulting from water damage, provided the resulting loss is itself a Loss Insured.

   d. Neglect, meaning neglect of the insured to use all reasonable means to save and preserve property at and after the time of a loss, or when property is endangered.

   e. War, including any undeclared war, civil war, insurrection, rebellion, revolution, warlike act by a military force or military personnel, destruction or seizure or use for a military purpose, and including any consequence of any of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental.

   f. Nuclear Hazard, meaning any nuclear reaction, radiation, or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these. Loss caused by the nuclear hazard shall not be considered loss caused by fire, explosion or smoke.

   However, we do insure for any direct loss by fire resulting from the nuclear hazard, provided the resulting fire loss is itself a Loss Insured.

2. We do not insure under any coverage for any loss consisting of one or more of the items below. Further, we do not insure for loss described in paragraph 1. immediately above regardless of whether one or more of the following: (a) directly or indirectly cause, contribute to or aggravate the loss; or (b) occur before, at the same time, or after the loss or any other cause of the loss:

   a. conduct, act, failure to act, or decision of any person, group, organization or governmental body whether intentional, wrongful, negligent, or without fault;

   b. defect, weakness, inadequacy, fault or unsoundness in:

8

(1) planning, zoning, development, surveying, siting;

(2) design, specifications, workmanship, construction, grading, compaction;

(3) materials used in construction or repair; or

(4) maintenance;

of any property (including land, structures, or improvements of any kind) whether on or off the residence premises; or

c. weather conditions.

However, we do insure for any resulting loss from items a., b. and c. unless the resulting loss is itself a Loss Not Insured by this Section.

## SECTION I - LOSS SETTLEMENT

Only the Loss Settlement provision shown in the Declarations applies. We will settle covered property losses according to the following.

**COVERAGE B - PERSONAL PROPERTY**

1. **B1 - Limited Replacement Cost Loss Settlement.**

   a. We will pay the cost to repair or replace property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below, subject to the following:

      (1) until repair or replacement is completed, we will pay only the cost to repair or replace less depreciation;

      (2) after repair or replacement is completed, we will pay the difference between the cost to repair or replace less depreciation and the cost you have actually and necessarily spent to repair or replace the property; and

      (3) if property is not repaired or replaced within two years after the date of loss, we will pay only the cost to repair or replace less depreciation.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

2. **B2 - Depreciated Loss Settlement.**

   a. We will pay the cost to repair or replace less depreciation at the time of loss for property covered under SECTION I - COVERAGES, COVERAGE B - PERSONAL PROPERTY, except for property listed in item b. below.

   b. We will pay market value at the time of loss for:

      (1) antiques, fine arts, paintings, statuary and similar articles which by their inherent nature cannot be replaced with new articles;

      (2) articles whose age or history contribute substantially to their value including, but not limited to, memorabilia, souvenirs and collectors items; and

      (3) property not useful for its intended purpose.

However, we will not pay an amount exceeding the smallest of the following for items a. and b. above:

   (1) our cost to replace at the time of loss;

   (2) the full cost of repair;

   (3) any special limit of liability described in the policy; or

   (4) any applicable Coverage B limit of liability.

FP-7654 TX

## SECTION I - CONDITIONS

1. **Insurable Interest and Limit of Liability.** Even if more than one person has an insurable interest in the property covered, we shall not be liable:

   a. to the insured for an amount greater than the insured's interest; or

   b. for more than the applicable limit of liability.

2. **Your Duties After Loss.** After a loss to which this insurance may apply, you shall see that the following duties are performed:

   a. give immediate notice to us or our agent. Also notify the police if the loss is caused by theft. Also notify the credit card company or bank if the loss involves a credit card or bank fund transfer card;

   b. protect the property from further damage or loss, make reasonable and necessary temporary repairs required to protect the property, keep an accurate record of repair expenditures;

   c. prepare an inventory of damaged or stolen personal property. Show in detail the quantity, description, age, replacement cost and amount of loss. Attach to the inventory all bills, receipts and related documents that substantiate the figures in the inventory;

   d. as often as we reasonably require:

      (1) exhibit the damaged property;

      (2) provide us with records and documents we request and permit us to make copies;

      (3) submit to and subscribe, while not in the presence of any other insured:

         (a) statements; and

         (b) examinations under oath; and

      (4) produce employees, members of the insured's household or others for examination under oath to the extent it is within the insured's power to do so; and

   e. submit to us, within 91 days after the loss, your signed, sworn proof of loss which sets forth, to the best of your knowledge and belief:

      (1) the time and cause of loss;

      (2) interest of the insured and all others in the property involved and all encumbrances on the property;

      (3) other insurance which may cover the loss;

      (4) changes in title or occupancy of the property during the term of this policy;

      (5) specifications of any damaged building and detailed estimates for repair of the damage;

      (6) an inventory of damaged or stolen personal property described in 2.c.;

      (7) receipts for additional living expenses incurred and records supporting the fair rental value loss; and

      (8) evidence or affidavit supporting a claim under the Credit Card, Bank Fund Transfer Card, Forgery and Counterfeit Money coverage, stating the amount and cause of loss.

3. **Loss to a Pair or Set.** In case of loss to a pair or set, we may elect to:

   a. repair or replace any part to restore the pair or set to its value before the loss; or

   b. pay the difference between the depreciated value of the property before and after the loss.

4. **Glass Replacement.** Loss for damage to glass caused by a Loss Insured shall be settled on the basis of replacement with safety glazing materials when required by ordinance or law.

5. **Appraisal.** If you and we fail to agree on the amount of loss, either one can demand that the amount of the loss be set by appraisal. If either makes a written demand for appraisal, each shall select a competent, disinterested appraiser. Each shall notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers shall then select a

11

competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court of record in the state where the residence premises is located to select an umpire. The appraisers shall then set the amount of the loss. If the appraisers submit a written report of an agreement to us, the amount agreed upon shall be the amount of the loss. If the appraisers fail to agree within a reasonable time, they shall submit their differences to the umpire. Written agreement signed by any two of these three shall set the amount of the loss. Each appraiser shall be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire shall be paid equally by you and us.

6. **Other Insurance.** If a loss covered by this policy is also covered by other insurance, we will pay only our share of the loss. Our share is the proportion of the loss that the applicable limit under this policy bears to the total amount of insurance covering the loss.

7. **Suit Against Us.** No action shall be brought unless there has been compliance with the policy provisions and the action is started within two years and one day after the date of loss or damage.

8. **Our Option.** We may repair or replace any part of the property damaged or stolen with similar property. Any property we pay for or replace becomes our property.

9. **Loss Payment.** We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment.

If we notify you that we will pay your claim, or part of your claim, we must pay within 5 business days after we notify you. If payment of your claim or part of your claim requires the performance of an act by you, we must pay within 5 business days after the date you perform the act.

10. **Abandonment of Property.** We need not accept any property abandoned by an insured.

11. **No Benefit to Bailee.** We will not recognize an assignment or grant coverage for the benefit of a person or organization holding, storing or transporting property for a fee. This applies regardless of any other provision of this policy.

12. **Intentional Acts.** If you or any person insured under this policy causes or procures a loss to property covered under this policy for the purpose of obtaining insurance benefits, then this policy is void as to you and any other insured that caused or contributed to the loss or its procurement.

13. **Residential Community Property Clause.** This policy, subject to all other terms and conditions, when covering residential community property, as defined by state law, shall remain in full force and effect as to the interest of each spouse covered, irrespective of divorce or change of ownership between the spouses unless excluded by endorsement attached to this policy until the expiration of the policy or until cancelled in accordance with the terms and conditions of this policy.

14. **Our Duties After Loss.**

  a. Within 15 days after we receive your written notice of claim, we must:

    (1) acknowledge receipt of the claim.

      If our acknowledgment of the claim is not in writing, we will keep a record of the date, method and content of our acknowledgment;

    (2) begin any investigation of the claim;

    (3) specify the information you must provide in accordance with "Your Duties After Loss" (item 2, above).

      We may request more information. If during the investigation of the claim such additional information is necessary.

  b. After we receive the information we request, we must notify you in writing whether the claim will be paid or has been denied or whether more information is needed:

    (1) within 15 business days; or

    (2) within 30 days if we have reason to believe the loss resulted from arson.

  c. If we do not approve payment of your claim or require more time for processing your claim, we must:

FP-7954 TX

(1) give the reasons for denying your claim; or

(2) give the reasons we require more time to process your claim. But, we must either approve or deny your claim within 45 days after requesting more time.

15. **Catastrophe Claims.** If a claim results from a weather related catastrophe or a major natural disaster, each claim handling deadline shown under the Duties After Loss and Loss Payment provisions is extended for an additional 15 days.

Catastrophe or Major Natural Disaster means a weather related event which:

a. is declared a disaster under the Texas Disaster Act of 1975; or

b. is determined to be a catastrophe by the State Board of Insurance.

## SECTION II - LIABILITY COVERAGES

### COVERAGE L - PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

### COVERAGE M - MEDICAL PAYMENTS TO OTHERS

We will pay the necessary medical expenses incurred or medically ascertained within three years from the date of an accident causing bodily injury. Medical expenses means reasonable charges for medical, surgical, x-ray, dental, ambulance, hospital, professional nursing, prosthetic devices and funeral services. This coverage applies only:

1. to a person on the insured location with the permission of an insured;

2. to a person off the insured location, if the bodily injury:

a. arises out of a condition on the insured location or the ways immediately adjoining;

b. is caused by the activities of an insured;

c. is caused by a residence employee in the course of the residence employee's employment by an insured; or

d. is caused by an animal owned by or in the care of an insured; or

3. to a residence employee if the occurrence causing bodily injury occurs off the insured location and arises out of or in the course of the residence employee's employment by an insured.

### SECTION II - ADDITIONAL COVERAGES

We cover the following in addition to the limits of liability:

1. **Claim Expenses.** We pay:

a. expenses we incur and costs taxed against an insured in suits we defend;

b. premiums on bonds required in suits we defend, but not for bond amounts greater than the Coverage L limit. We are not obligated to apply for or furnish any bond;

c. reasonable expenses an insured incurs at our request. This includes actual loss of earnings (but not loss of other income) up to $100 per day for aiding us in the investigation or defense of claims or suits;

d. prejudgment interest awarded against the insured on that part of the judgment we pay; and

e. interest on the entire judgment which accrues after entry of the judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies.

FP-7954 TX

2. **First Aid Expenses.** We will pay expenses for first aid to others incurred by an insured for bodily injury covered under this policy. We will not pay for first aid to you or any other insured.

3. **Damage to Property of Others.**

   a. We will pay for property damage to property of others caused by an insured.

   b. We will not pay more than the smallest of the following amounts:

      (1) replacement cost at the time of loss;

      (2) full cost of repair; or

      (3) $500 in any one occurrence.

   c. We will not pay for property damage:

      (1) if insurance is otherwise provided in this policy;

      (2) caused intentionally by an insured who is 13 years of age or older;

      (3) to property, other than a rented golf cart, owned by or rented to an insured, a tenant of an insured, or a resident in your household; or

      (4) arising out of:

         (a) business pursuits;

         (b) any act or omission in connection with a premises an insured owns, rents or controls, other than the insured location; or

         (c) the ownership, maintenance, or use of a motor vehicle, aircraft, or watercraft, including airboat, air cushion, personal watercraft, sail board or similar type watercraft.

## SECTION II - EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

   a. bodily injury or property damage:

      (1) which is either expected or intended by the insured; or

      (2) which is the result of willful and malicious acts of the insured;

   b. bodily injury or property damage arising out of business pursuits of any insured or the rental or holding for rental of any part of any premises by any insured. This exclusion does not apply:

      (1) to activities which are ordinarily incident to non-business pursuits;

      (2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

      (3) to the rental or holding for rental of a residence of yours:

         (a) on an occasional basis for the exclusive use as a residence;

         (b) in part, unless intended for use as a residence by more than two roomers or boarders; or

         (c) in part, as an office, school, studio or private garage;

      (4) when the dwelling on the residence premises is a two, three or four-family dwelling and you occupy one part and rent or hold for rental the other part; or

      (5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations;

   c. bodily injury or property damage arising out of the rendering or failing to render professional services;

   d. bodily injury or property damage arising out of any premises currently owned or rented to any insured which is not an insured location. This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured;

14

FP-7954 TX

e. bodily injury or property damage arising out of the ownership, maintenance, use, loading or unloading of:

(1) an aircraft, except model or hobby aircraft not used or designed to carry people or cargo;

(2) a motor vehicle owned or operated by or rented or loaned to any insured; or

(3) a watercraft:

(a) owned by or rented to any insured if it has inboard or inboard-outdrive motor power of more than 50 horsepower;

(b) owned by or rented to any insured if it is a sailing vessel, with or without auxiliary power, 26 feet or more in overall length;

(c) powered by one or more outboard motors with more than 25 total horsepower owned by any insured;

(d) designated as an airboat, air cushion, or similar type of craft; or

(e) owned by any insured which is a personal watercraft using a water jet pump powered by an internal combustion engine as the primary source of propulsion.

This exclusion does not apply to bodily injury to a residence employee arising out of and in the course of the residence employee's employment by an insured, Exclusion e.(3) does not apply while the watercraft is on the residence premises;

f. bodily injury or property damage arising out of:

(1) the entrustment by any insured to any person;

(2) the supervision by any insured of any person;

(3) any liability statutorily imposed on any insured; or

(4) any liability assumed through an unwritten or written agreement by any insured;

with regard to the ownership, maintenance or use of any aircraft, watercraft, or motor vehicle which is not covered under Section II of this policy;

g. bodily injury or property damage caused directly or indirectly by war, including undeclared war, or any warlike act including destruction or seizure or use for a military purpose, or any consequence of these. Discharge of a nuclear weapon shall be deemed a warlike act even if accidental;

h. bodily injury to you or any insured within the meaning of part a. or b. of the definition of insured.

This exclusion also applies to any claim made or suit brought against you or any insured to share damages with or repay someone else who may be obligated to pay damages because of the bodily injury sustained by you or any insured within the meaning of part a. or b. of the definition of insured;

i. any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 13 years of age; or

j. bodily injury or property damage arising out of an insured's participation in, or preparation or practice for any prearranged or organized race, speed or demolition contest, or similar competition involving a motorized land vehicle or motorized

18

watercraft. This exclusion does not apply to a sailing vessel less than 26 feet in overall length with or without auxiliary power.

2. Coverage L does not apply to:

   a. liability:

      (1) for your share of any loss assessment charged against all members of an association of property owners; or

      (2) assumed under any unwritten contract or agreement, or by contract or agreement in connection with a business of the insured;

   b. property damage to property currently owned by any insured;

   c. property damage to property rented to, occupied or used by or in the care of any insured. This exclusion does not apply to property damage caused by fire, smoke or explosion;

   d. bodily injury to a person eligible to receive any benefits required to be provided or voluntarily provided by an insured under a workers' compensation, non-occupational disability, or occupational disease law;

   e. bodily injury or property damage for which an insured under this policy is also an insured under a nuclear energy liability policy or would be an insured but for its termination upon exhaustion of its limit of liability. A nuclear energy liability policy is a policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada, or any of their successors.

3. Coverage M does not apply to bodily injury:

   a. to a residence employee if it occurs off the insured location and does not arise out of or in the course of the residence employee's employment by an insured;

   b. to a person eligible to receive any benefits required to be provided or voluntarily provided under any workers' compensation, non-occupational disability or occupational disease law;

   c. from nuclear reaction, radiation or radioactive contamination, all whether controlled or uncontrolled or however caused, or any consequence of any of these;

   d. to a person other than a residence employee of an insured, regularly residing on any part of the insured location.

## SECTION II - CONDITIONS

1. Limit of Liability. The Coverage L limit is shown in the Declarations. This is our limit for all damages from each occurrence regardless of the number of insureds, claims made or persons injured.

   The Coverage M limit is shown in the Declarations. This is our limit for all medical expense for bodily injury to one person as the result of one accident.

2. Severability of Insurance. This insurance applies separately to each insured. This condition shall not increase our limit of liability for any one occurrence.

3. Duties After Loss. In case of an accident or occurrence, the insured shall perform the following duties that apply. You shall cooperate with us in seeing that these duties are performed:

   a. give written notice to us or our agent as soon as practicable, which sets forth:

      (1) the identity of this policy and insured;

      (2) reasonably available information on the time, place and circumstances of the accident or occurrence; and

      (3) names and addresses of any claimants and available witnesses;

   b. immediately forward to us every notice, demand, summons or other process relating to the accident or occurrence;

   c. at our request, assist in:

      (1) making settlement;

16                                                    FP-7954 TX

(2) the enforcement of any right of contribution or indemnity against a person or organization who may be liable to an insured;

(3) the conduct of suits and attend hearings and trials; and

(4) securing and giving evidence and obtaining the attendance of witnesses;

d. under the coverage - **Damage to Property of Others**, exhibit the damaged property if within the insured's control; and

e. the insured shall not, except at the insured's own cost, voluntarily make payments, assume obligations or incur expenses. This does not apply to expense for first aid to others at the time of the bodily injury.

4. **Duties of an Injured Person - Coverage M.** The injured person, or, when appropriate, someone acting on behalf of that person, shall:

a. give us written proof of claim, under oath if required, as soon as practicable;

b. execute authorization to allow us to obtain copies of medical reports and records; and

c. submit to physical examination by a physician selected by us when and as often as we reasonably require.

5. **Payment of Claim - Coverage M.** Payment under this coverage is not an admission of liability by an insured or us.

6. **Suit Against Us.** No action shall be brought against us unless there has been compliance with the policy provisions.

No one shall have the right to join us as a party to an action against an insured. Further, no action with respect to Coverage L shall be brought against us until the obligation of the insured has been determined by final judgment or agreement signed by us.

7. **Bankruptcy of an Insured.** Bankruptcy or insolvency of an insured shall not relieve us of our obligation under this policy.

8. **Other Insurance - Coverage L.** This insurance is excess over any other valid and collectible insurance except insurance written specifically to cover as excess over the limits of liability that apply in this policy.

9. **Notice of Settlement of Liability Claim.**

a. We will notify the insured in writing of any initial offer to compromise or settle a claim against the insured. We will give the insured notice within 10 days after the date the offer is made.

b. We will notify the insured in writing of any settlement of a claim against the insured. We will give the insured notice within 30 days after the date of settlement.

## SECTION I AND SECTION II - CONDITIONS

1. **Policy Period.** This policy applies only to loss under Section I or bodily injury or property damage under Section II which occurs during the period this policy is in effect.

2. **Concealment or Fraud.** This policy is void as to you and any other insured, if you or any other insured under this policy has intentionally concealed or misrepresented any material fact or circumstance relating to this insurance, whether before or after a loss.

3. **Liberalization Clause.** If we adopt any revision which would broaden coverage under this policy without

additional premium, within 60 days prior to or during the period this policy is in effect, the broadened coverage will immediately apply to this policy.

4. **Waiver or Change of Policy Provisions.** A waiver or change of any provision of this policy must be in writing by us to be valid. Our request for an appraisal or examination shall not waive any of our rights.

5. **Cancellation.**

a. You may cancel this policy at any time by notifying us of the date cancellation is to take effect. We will

send you any refund due when the policy is returned to us.

b. We may cancel this policy for the reasons stated in this condition by mailing you notice in writing of the date cancellation takes affect.

  (1) If this policy has been in effect for less than 90 days and is not a renewal policy, we may cancel for any reason.

  The effective date of cancellation cannot be before:

  (a) the 10th day after we mail notice if we cancel for nonpayment of premium;

  (b) the 30th day after we mail notice if we cancel for any other reason.

  (2) If this policy has been in effect 90 days or more, we may not cancel this policy unless:

  (a) you do not pay the premium or any portion of the premium when due;

  (b) the State Board of Insurance determines that continuation of the policy would violate the Texas Insurance Code or any other laws governing the business of insurance in this state;

  (c) you submit a fraudulent claim;

  (d) there is an increase in the hazard covered by this policy that is within your control and that would produce an increase in the premium/rate of this policy.

  The effective date of cancellation cannot be before the 10th day after we mail the notice. Our notice of cancellation must state the reason for cancellation.

c. If we cancel, our notice to you will state that if the refund is not included with the notice, it will be returned on demand.

d. We may not cancel this policy solely because you are an elected official.

6. Nonrenewal.

a. We may not refuse to renew this policy because of claims for losses resulting from natural causes.

b. We may not refuse to renew this policy solely because you are an elected official.

c. We may refuse to renew this policy if you have filed three or more claims under the policy in any three year period that do not result from natural causes.

  If you have filed two claims in a period of less than three years, we may notify you in writing, that if you file a third claim during the three-year period, we may refuse to renew this policy by providing you proper notice of our refusal to renew as provided in d. below. If we do not notify you after the second claim, we may not refuse to renew this policy because of losses.

  A claim does not include a claim that is filed but is not paid or payable under the policy.

d. If we refuse to renew this policy, we must deliver to you, or mail to you at your mailing address shown in the Declarations and any mortgagee named in the Declarations, written notice of our refusal to renew not later than the 30th day before the date on which this policy expires. Proof of mailing will be sufficient proof of notice. If we fail to give you proper notice of our decision not to renew, you may require us to renew the policy.

7. Assignment. Assignment of this policy shall not be valid unless we give our written consent.

8. Subrogation. An insured may waive in writing before a loss all rights of recovery against any person. If not waived, we may require an assignment of rights of recovery for a loss to the extent that payment is made by us.

  If an assignment is sought, an insured shall:

  a. sign and deliver all related papers;

  b. cooperate with us in a reasonable manner; and

  c. do nothing after a loss to prejudice such rights.

  Subrogation does not apply under Section II to Medical Payments to Others or Damage to Property of Others.

FP-7864 TX

9. **Death.** If any person shown in the Declarations or the spouse, if a resident of the same household, dies:

   a. we insure the legal representative of the deceased. This condition applies only with respect to the premises and property of the deceased covered under this policy at the time of death;

   b. Insured includes:

      (1) any member of your household who is an insured at the time of your death, but only while a resident of the residence premises; and

      (2) with respect to your property, the person having proper temporary custody of the property until appointment and qualification of a legal representative.

10. **Conformity to State Law.** When a policy provision is in conflict with the applicable law of the State in which this policy is issued, the law of the State will apply.

11. **Right to Inspect.** We have the right but are not obligated to make inspections and surveys at any time, give you reports on conditions we find and recommend changes. Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

   We do not:

   a. make safety inspections;

   b. undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

   c. warrant that conditions are safe or healthful; or

   d. warrant that conditions comply with laws, regulations, codes or standards.

   This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

## OPTIONAL POLICY PROVISIONS

Each Optional Policy Provision applies only as shown in the Declarations and is subject to all the terms, provisions, exclusions and conditions of this policy.

**Option BP - Business Property.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

   The $1,000 limit is replaced with the amount shown in the Declarations for this option.

**Option BU - Business Pursuits.** SECTION II - EXCLUSIONS, item 1.b. is modified as follows:

1. Section II coverage applies to the business pursuits of an insured who is a:

   a. clerical office employee, salesperson, collector, messenger; or

   b. teacher (except college, university and professional athletic coaches), school principal or school administrator;

while acting within the scope of the above listed occupations.

2. However, no coverage is provided:

   a. for bodily injury or property damage arising out of a business owned or financially controlled by the insured or by a partnership of which the insured is a partner or member;

   b. for bodily injury or property damage arising out of the rendering of or failure to render professional services of any nature (other than teaching or school administration). This exclusion includes but is not limited to:

      (1) computer programming, architectural, engineering or industrial design services;

      (2) medical, surgical, dental or other services or treatment conducive to the health of persons or animals; and

      (3) beauty or barber services or treatment;

19

c. for bodily injury to a fellow employee of the insured injured in the course of employment; or

d. when the insured is a member of the faculty or teaching staff of a school or college;

  (1) for bodily injury or property damage arising out of the maintenance, use, loading or unloading of:

    (a) draft or saddle animals, including vehicles for use with them; or

    (b) aircraft, motor vehicles, recreational motor vehicles or watercraft, airboats, air cushions or personal watercraft which use a water jet pump powered by an internal combustion engine as the primary source of propulsion;

    owned or operated, or hired by or for the insured or employer of the insured or used by the insured for the purpose of instruction in the use thereof; or

  (2) under Coverage M for bodily injury to a pupil arising out of corporal punishment administered by or at the direction of the insured.

**Option FA - Firearms.** Firearms are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

a. mechanical breakdown, wear and tear, gradual deterioration;

b. insects or vermin;

c. any process of refinishing, renovating, or repairing;

d. dampness of atmosphere or extremes of temperatures;

e. inherent defect or faulty manufacture;

f. rust, fouling or explosion of firearms;

g. breakage, marring, scratching, tearing or denting unless caused by fire, thieves or accidents to conveyances; or

h. infidelity of an insured's employees or persons to whom the insured property may be entrusted or rented;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations.

**Option HC - Home Computer.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item j., for electronic data processing system equipment and the recording or storage media used with that equipment is increased to be the amount shown in the Declarations for this option.

**Option IO - Incidental Business.** The coverage provided by this option applies only to that incidental business occupancy on file with us.

1. COVERAGE B - PERSONAL PROPERTY is extended to include equipment, supplies and furnishings usual and incidental to this business occupancy. This Optional Policy Provision does not include electronic data processing system equipment or the recording or storage media used with that equipment or merchandise held as samples or for sale or for delivery after sale.

The Option IO limits are shown in the Declarations. The first limit applies to property on the residence premises. The second limit applies to property while off the residence premises. These limits are in addition to the COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability on property used or intended for use in a business.

2. Under Section II, the residence premises is not considered business property because an insured occupies a part of it as an incidental business.

FP-7954 TX

3.  SECTION II - EXCLUSIONS, Item 1.b. of Coverage L and Coverage M is replaced with the following:

b.  bodily injury or property damage arising out of business pursuits of an insured or the rental or holding for rental of any part of any premises by an insured. This exclusion does not apply:

(1) to activities which are ordinarily incident to non-business pursuits or to business pursuits of an insured which are necessary or incidental to the use of the residence premises as an incidental business;

(2) with respect to Coverage L to the occasional or part-time business pursuits of an insured who is under 19 years of age;

(3) to the rental or holding for rental of a residence of yours:

(a) on an occasional basis for exclusive use as a residence;

(b) in part, unless intended for use as a residence by more than two roomers or boarders; or

(c) in part, as an incidental business or private garage;

(4) when the dwelling on the residence premises is a two family dwelling and you occupy one part and rent or hold for rental the other part; or

(5) to farm land (without buildings), rented or held for rental to others, but not to exceed a total of 500 acres, regardless of the number of locations.

4.  This insurance does not apply to:

a.  bodily injury to an employee of an insured arising out of the residence premises as an incidental business other than to a residence employee while engaged in the employee's employment by an insured;

b.  bodily injury to a pupil arising out of corporal punishment administered by or at the direction of the insured;

c.  liability arising out of any acts, errors or omissions of an insured, or any other person for whose acts an insured is liable, resulting from the preparation or approval of data, plans, designs, opinions, reports, programs, specifications, supervisory inspections or engineering services in the conduct of an insured's incidental business involving data processing, computer consulting or computer programming; or

d.  any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

Coverage M does not apply to any person indicated in (1) and (2) above.

This exclusion does not apply to the occasional child care services provided by any insured, or to the part-time child care services provided by any insured who is under 19 years of age.

Option JF - Jewelry and Furs. Jewelry, watches, fur garments and garments trimmed with fur, precious and semi-precious stones, gold other than goldware, silver other than silverware and platinum are insured for accidental direct physical loss or damage.

The limits for this option are shown in the Declarations. The first amount is the limit for any one article; the second amount is the aggregate limit for each loss.

21

The following additional provisions apply:

1. we do not insure for any loss to the property described in this option either consisting of, or directly and immediately caused by, one or more of the following:

   a. mechanical breakdown, wear and tear, gradual deterioration;

   b. insects or vermin;

   c. inherent vice; or

   d. seizure or destruction under quarantine or customs regulations;

2. our limit for loss by any Coverage B peril except theft is the limit shown in the Declarations for Coverage B, plus the aggregate limit;

3. our limits for loss by theft are those shown in the Declarations for this option. These limits apply in lieu of the Coverage B theft limit; and

4. our limits for loss by any covered peril except those in items 2. and 3. are those shown in the Declarations.

**Option SG - Silverware and Goldware Theft.** The COVERAGE B - PERSONAL PROPERTY, Special Limits of Liability, item i., for theft of silverware and goldware is increased to be the amount shown in the Declarations for this option.

**SERVICE OF PROCESS** - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder is located if State Farm Lloyds, Inc. is licensed in such state; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds, Inc. at Dallas, Texas. Underwriters at State Farm Lloyds, Inc. have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds, Inc. supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds, Inc. shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

IN WITNESS WHEREOF, the Company has executed and attested these presents.

State Farm Lloyds

By:

*Michael S. Way*

Secretary
State Farm Lloyds, Inc.
Attorney-in-Fact

*Phillip G. Hawkins*

President
State Farm Lloyds, Inc.
Attorney-in-Fact

22

FP-7954 TX

FE-3535
Page 6 of 8

1.  **Limit of Liability.** The Coverage L limit is shown in the **Declarations.** This is the limit for all damages from each **occurrence** for the policy period in which the **bodily injury** or **property damage** first occurs, regardless of the number of **insureds**, claims made or persons injured. No additional limits or coverage will be available for the **occurrence** under any additional policy periods while this policy remains in force.

    The Coverage M limit is shown in the **Declarations.** This is our limit for all medical expense for **bodily injury** to one person as the result of one accident.

The following condition is added to item 4., **Duties of an Injured Person – Coverage M:**

d.  the injured person, or, when appropriate, someone acting on behalf of that person, shall:

    (1) provide us with any required authorizations we need to obtain information reasonably related to the injury(ies) listed in the claim; and

    (2) submit to us all information reasonably related to the injury(ies) listed in the claim that we need to comply with state or federal law.

**SECTION I AND SECTION II – CONDITIONS**

Item 11., **Right to Inspect,** is replaced by the following:

11. **Right to Inspect.** We have the right but are not obligated to perform the following:

    a.  make inspections and surveys of the **insured location** at any time;

    b.  provide you with reports on conditions we find; or

    c.  recommend changes.

    Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged.

    We do not:

    a.  make safety inspections;

    b.  undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public;

    c.  warrant that conditions are safe or healthful; or

    d.  warrant that conditions comply with laws, regulations, codes or standards.

    This condition applies not only to us but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

The following conditions are added:

12. **Premium.**

    a.  Unless as otherwise provided by an alternative payment plan in effect with the **State Farm** **Companies** with respect to the premium for this policy, the premium is due and payable in full on or before the first day of the policy period shown in the most recently issued **Declarations.**

    b.  The renewal premium for this policy will be based upon the rates in effect, the coverages carried, the applicable limits, deductibles and other elements that affect the premium applicable at the time of renewal.

    c.  The premium for this policy may vary based upon:

        (1) the purchase of other products or services from the **State Farm Companies;**

        (2) the purchase of products or services from an organization that has entered into an agreement or contract with the **State Farm Companies.** The **State Farm Companies** do not warrant the merchantability, fitness, or quality of any product or service offered or provided by that organization; or

        (3) an agreement, concerning the insurance provided by this policy, that the **State Farm Companies** has with an organization of which you are a member, employee, subscriber, licensee, or franchisee.

    d.  Your purchase of this policy may allow:

        (1) you to purchase or obtain certain coverages, coverage options, coverage deductibles, coverage limits, or coverage terms on other products from the **State Farm Companies,** subject to their applicable eligibility rules; or

        (2) the premium or price for other products or services purchased by you, including non-insurance products or services, to vary. Such other products or services must be provided by the **State Farm Companies** or by an organization that has entered into an agreement or contract with the **State Farm Companies.** The **State Farm Companies** do not warrant the merchantability, fitness or quality of any product or service offered or provided by that organization.

13. **Change of Policy Address.** We may change the named insured's policy address as shown in the **Declarations** and in our records to the most recent address provided to us by:

    a.  you; or

    b.  the United States Postal Service.

**OPTIONAL POLICY PROVISIONS**

**Option BP – Business Property** is replaced by the following:

©. Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED

FE-3535
Page 6 of 6

Option BP – Business Property. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item b., for property used or intended for use in a business, including merchandise held as samples or for sale or for delivery after sale, is changed as follows:

The $1,500 limit is replaced with the amount shown in the Declarations for this option.

Option HC – Home Computer is replaced by the following:

Option HC – Home Computer. The COVERAGE B – PERSONAL PROPERTY, Special Limits of Liability, item j., is increased to be the amount shown in the Declarations for this option.

The SERVICE OF PROCESS provision, which follows the OPTIONAL POLICY PROVISIONS section of the policy, is replaced by the following:

SERVICE OF PROCESS - Service of Process may be had upon the State Official duly designated for such purpose in the state in which the property insured hereunder

is located if State Farm Lloyds is licensed in such state; or upon the Commissioner of Insurance of the State of Texas; or upon the duly appointed Attorney-in-Fact for State Farm Lloyds at Dallas, Texas. Underwriters at State Farm Lloyds have complied with the laws of the State of Texas regulating Lloyds plan insurance and said statutes are hereby made a part of the policy. The entire assets of State Farm Lloyds supports its policies, but each individual underwriter's liability is several and not joint and is limited by law to the amount fixed by his/her underwriter's contract and subscription and no underwriter is liable as a partner. This policy is made and accepted subject to the foregoing stipulations and conditions together with such other provisions, agreements or conditions as may be endorsed hereon or added hereto, and no agent or other representative of State Farm Lloyds shall have the power to waive any provision or condition of this policy. This policy is non-assessable and no contingent liability of any kind and character attaches to the insured named herein.

All other policy provisions apply.

FE-3535

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012

©, Copyright, State Farm Mutual Automobile Insurance Company, 2012
CONTINUED